**J.P., Appellant,**

v.

**S.B.B. and B.B., Appellee.**

**No. 2011–CA–000516–ME.**

Court of Appeals of Kentucky.

Feb. 24, 2012.

Discretionary Review Denied by Supreme Court June 13, 2012.

Leigh K. Meredith, Louisville, KY, for appellant.

Ralph D. Gibson, Somerset, KY, for appellee.

Before COMBS, KELLER, and STUMBO, Judges.

*OPINION*

COMBS, Judge:

J.P. appeals an order of the Pulaski Circuit Court denying his petition to estab-

lish paternity, custody, visitation, and child support. After our review, we vacate and remand.

The record and briefs are unclear about the date, but J.P. and S.B.B. began an affair either in 2001 or 2002 that lasted until 2007. S.B.B. was married during the entire time. S.B.B. admits that throughout the affair, she was sexually active both with J.P. and with her husband. In January 2004, S.B.B. gave birth to T.C.B. The record reveals that J.P. was involved in T.C.B.'s life and formed a close relationship with him until S.B.B. ended the affair in 2007. Even after the affair ended, J.P. was able to visit with T.C.B.—although less frequently. After S.B.B. terminated his visits, J.P. filed a petition to establish paternity, custody, visitation, and child support in July 2009. In September 2009, J.P. also filed a petition for genetic testing in order to establish paternity.

The Pulaski Circuit Court held a hearing in November 2010. It entered its findings of facts and conclusions of law on February 10, 2011. The trial court found that the marital relationship between S.B.B. and her husband had not ceased during the ten-month period preceding the birth of T.C.B., and that, therefore, J.P. did not have standing to pursue a paternity action. The court also held that it did not have subject matter jurisdiction. This appeal followed.

■ We note that subject matter jurisdiction is not an issue in this appeal. J.P. first argues that the court erred in concluding that he did not have standing to assert his claim of paternity. We agree.

■ Standing is "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary 1413 (7th Ed.1999). A person has met the requirement for standing if he has "a real and substantial interest in the subject matter of the litigation...." *Stevens v. Stevens*, 798 S.W.2d 136, 139 (Ky. 1990) (*citing Rose v. Council for Better Education, Inc.*, 790 S.W.2d 186, 202 (Ky. 1989)). Whether a party has standing is determined by the facts of the case. *Id.*

In its order, the family court relied on *J.N.R. v. O'Reilly*, 264 S.W.3d 587 (Ky. 2008). The facts of *O'Reilly* were similar to the facts here. A married woman was engaged in an affair while continuing a sexual relationship with her husband. The Supreme Court held that the woman's lover did not have standing for a paternity claim because the marital relationship had not ceased ten months before the birth of the child. As in the case before us, the court in *O'Reilly* focused upon whether the marital relationship had ceased. The legal presumption governing at that time was that a child born to a married woman was the child of her husband *unless* the evidence shows that the marital relationship had ceased ten months before the birth of the child. *See* Kentucky Revised Statute[s] (KRS) 406.011.

Several months following the hearing and the order of the family court in this case, the Supreme Court overruled *O'Reilly* in *J.A.S. v. Bushelman*, 342 S.W.3d 850 (Ky.2011). *Bushelman* shifted the legal analysis away from the status of the woman's marriage and instead scrutinized whether the woman's lover presented sufficient evidence to support the possibility of a paternity claim. It emphasized that it is the responsibility of the *biological father* of the child to provide the child's support. *Id.* at 857. Therefore, *Bushelman* holds that even if a woman is married, a *putative father* has standing to maintain a paternity suit if there is sufficient evidence to overcome the presumption of the husband's paternity.

S.B.B. argues that *Bushelman* holds that the standard of proof to overcome the

presumption of paternity is "proof beyond a reasonable doubt." *Id.* at 860. (Citations omitted). However, that heightened standard pertains to the ultimate finder of fact and is not the predicate for the initiation of a paternity case. In the case before us, the family court did not consider the evidence that J.P. presented when it dismissed the petition. It dismissed the case summarily, correctly relying on *O'Reilly* as the pertinent authority at the time. However, *Bushelman* has since superseded *O'Reilly,* and under the *Bushelman* standard, we hold that J.P. has presented enough evidence to proceed with his paternity claim and to have his evidence examined.

First, J.P. has demonstrated a real and substantial interest in the subject matter. Although S.B.B. characterized their relationship as "casual," she testified at the hearing that they engaged in sexual intercourse one or two times per week for a number of years, including more than the one year preceding the birth of her child. Furthermore, she admitted that she did not use birth control during her encounters with J.P. Since she was also sexually active with her husband, either man could have fathered her child. J.P. presented other evidence as well, but S.B.B.'s admissions are sufficient to provide a reasonable basis of J.P.'s potential paternity.

S.B.B. seeks to distinguish this case from *Bushelman* because J.P. has not undergone DNA testing in order to determine paternity. (In *Bushelman,* the mother had consented to the DNA test.) J.P. has not had the opportunity but did ask the court to grant him that opportunity. In *Bushelman,* the Supreme Court encouraged the use of DNA testing to establish paternity:

> We see no justification for keeping the traditional presumption of paternity locked in the science of centuries past.... DNA testing now serves as an appropriate form of evidence, not to avoid the traditional presumption of paternity, but to rebut it.

*Id.* at 861. DNA testing is clearly appropriate in this case.

Pursuant to the more recent authority set forth in *Bushelman,* we vacate the order of the Pulaski Circuit Court and remand for additional proceedings.

ALL CONCUR.